IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACKLYN HYONK LEE** and **JONGBUM PAK**, <br><br> Plaintiffs, <br><br> v. <br><br> **RICHARD MILLER,** Portland Field Office Director, U.S. Citizenship and Immigration Services; **ALEJANDRO MAYORKAS,** Secretary, Department of Homeland Security; and **MERRICK B. GARLAND,** U.S. Attorney General, <br><br> Defendants. | Case No. 3:21-cv-94-SI <br><br> **OPINION AND ORDER** |

Samuel W. Asbury, IMMIGRATION SOLUTIONS INC., PO Box 553, Fairview, OR 97024. Of Attorney for Plaintiffs.

Natalie K. Wight, United States Attorney, and Alison Milne, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Jacklyn Hyonk Lee (Lee) and her husband Jongbum Pak (Pak) (collectively, Plaintiffs) bring this lawsuit alleging that Defendants, who are U.S. government officials, violated the Administrative Procedure Act (APA) and Plaintiffs' due process rights under the

PAGE 1 – OPINION AND ORDER

Fifth Amendment. Plaintiffs' claims arise out of the denial by U.S. Citizenship and Immigration Services (USCIS) of Lee's I-130 immigrant petition on behalf of Pak and affirmance of that decision by the Board of Immigration Appeals (BIA). Plaintiffs also challenge the denial by USCIS of Pak's I-485 application for permanent residency. Defendants move for summary judgment on all claims, arguing that the government's conduct was neither arbitrary nor capricious and did not violate Plaintiffs' due process rights. For the reasons discussed below, the Court grants Defendants' motion.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

In an action reviewing the merits under the APA, however, the Court does not ask whether there is a genuine dispute as to any material fact. Rather, "the function of the district

court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). In an APA-review case, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770.

## B. Administrative Procedure Act

The Administrative Procedure Act (APA) provides for judicial review of final agency action. 5 U.S.C. §§ 701-706. Under the APA, a court must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2). "An agency must 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1187 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43; *see also Gill*, 913 F.3d at 1187. The basis for the agency's decision must come from the record. *Gill*, 913 F.3d at 1187.

A reviewing court's inquiry must be "thorough," but "the standard of review is highly deferential; the agency's decision is entitled to a presumption of regularity, and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quotation marks and citation omitted). Although a

court's review is deferential, the court "must engage in a careful, searching review to ensure that the agency has made a rational analysis and decision on the record before it." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 927 (9th Cir. 2008); *see also Brower v. Evans*, 257 F.3d 1058, 1067 (9th Cir. 2001) ("The presumption of agency expertise can be rebutted when its decisions, while relying on scientific expertise, are not reasoned."). A court "must not 'rubber-stamp' . . . administrative decisions that [it] deem[s] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005) (first alteration in original, remaining alterations added). A court may, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Gill*, 913 F.3d at 1187-88 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

## BACKGROUND

Pak, a citizen of South Korea, was the beneficiary of an I-130 petition with his first wife in 2011 (2011 Petition). USCIS denied the 2011 Petition because it determined there was insufficient evidence establishing the bona fides of marriage. In the adjudication of the 2011 Petition, however, USCIS stopped short of making an affirmative finding that Pak's first marriage was for the purpose of evading immigration laws, *i.e.*, that it was fraudulent.

Pak and Lee have been married since September 9, 2014. Lee, a United States citizen, filed the instant I-130 petition (the Instant Petition) on behalf of Pak in December 2016. In the adjudication of the Instant Petition, USCIS found Plaintiffs' current marriage to be bona fide. Nevertheless, USCIS denied the Instant Petition. The agency based its denial on a finding, made for the first time in the 2018 adjudication of the Instant Petition, that Pak's first marriage was fraudulent because he entered his first marriage for the purpose of evading immigration laws. This finding makes Pak ineligible to be a beneficiary of an immigration petition under 8 U.S.C.

§ 1154(c) (Immigration and Nationality Act (INA) § 204(c)), which is sometimes called the "marriage fraud bar."[1]

Plaintiffs appealed the denial of the Instant Petition to the BIA. Plaintiffs argued that because USCIS had not made an affirmative finding of marriage fraud in adjudicating Pak's 2011 Petition, it was an error for the agency to apply the INA § 204(c) marriage fraud bar to Pak in the adjudication of the Instant Petition. The BIA upheld USCIS' denial of the Instant Petition and dismissed Plaintiffs' appeal. *Matter of Pak*, 28 I. & N. Dec. 113 (BIA 2020).

On January 22, 2021, Plaintiffs filed this lawsuit. Plaintiffs challenge the denial of the Instant Petition and Pak's I-485 application and allege five claims against Defendants, three under the APA and two under the Due Process Clause of the Fifth Amendment. Plaintiffs' first three claims are based on USCIS' failure to provide the derogatory evidence on which it relied for its determination that Pak's first marriage was fraudulent. Plaintiff brings two of these claims under the APA and one claim under the Due Process Clause. Plaintiffs' fourth and fifth claims

---

[1] Section 204(c) provides, in relevant part: "[N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." Under 6 U.S.C. § 557, references to "Attorney General" are deemed changed to the Secretary of the Department of Homeland Security, who. under 8 C.F.R. § 100.1. delegated that authority to Field Office Directors.

The implementing regulation provides, in relevant part: "Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file." 8 C.F.R. § 204.2(a)(1)(ii).

challenge USCIS' application of the marriage fraud bar in INA § 204(c) in an adjudication of a second I-130 petition when the agency previously made no affirmative finding of fraud. Plaintiff brings one claim under the Due Process Cause and one claim under the APA.

On June 23, 2021, five months after Plaintiffs filed this action, USCIS asked the BIA to reopen administrative review of the Instant Petition and remand the matter to USCIS for re-adjudication.[2] If the BIA granted the request, "USCIS [would] provide Plaintiffs the evidence Defendants relied on in concluding that Plaintiff Pak's first marriage was fraudulent; allow Plaintiffs to submit any rebuttal evidence; and re-adjudicate the I-130 Petition." ECF 38 at 2. Upon filing the request to remand with the BIA, Defendants moved to stay the proceedings before this Court to allow the agency to re-adjudicate the Instant Petition.

On June 29, 2021, Plaintiffs opposed Defendants' request for remand before the BIA, even though the request would have provided Plaintiffs with the evidence relied on by USCIS in concluding that Pak's first marriage was fraudulent and allow Plaintiffs to submit rebuttal evidence. Plaintiffs argued that remand would waste time and resources because the important issue was Plaintiffs' contention that Defendants were improperly applying INA § 204(c) to the Instant Petition when no finding of fraud previously had been made on Pak's 2011 Petition. On the same day, Plaintiffs objected to this Court staying this case and moved to file a First Amended Complaint. The Court granted Plaintiffs' motion to amend and denied Defendants' motion to stay with leave to refile against Plaintiffs' amended complaint.

---

[2] USCIS unilaterally filed the request to remand to comply with the holdings and standards in *Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020). In *Zerezghi*, the Ninth Circuit held that a petitioner's procedural due process rights are violated in an I-130 petition adjudication when the government uses undisclosed records to find marriage fraud. 955 F.3d at 809-10. In its decision on Plaintiffs' appeal in *Matter of Pak*, issued after *Zerezghi*, the BIA nevertheless relied on an undisclosed document, the 2012 "Summary of Findings," as derogatory evidence supporting USCIS' determination. *Matter of Pak*, 28 I. & N. Dec. at 118.

Defendants renewed their motion to stay against Plaintiffs' amended complaint. On October 29, 2021, the Court stayed these proceedings pending the BIA's decision. The Court concluded that remand would allow USCIS and the BIA to correct the mistakes identified in Plaintiffs' first, second, and third claims for relief and could potentially affect Plaintiffs' remaining two claims for relief. *Lee v. Miller*, 2021 WL 5260294 (D. Or. Oct. 29, 2021). On January 19, 2022, the BIA denied Defendants' request for remand. Defendants then filed the pending motion for summary judgment.

## DISCUSSION

Plaintiffs focus on the traditional summary judgment standard of whether there is a dispute as to any material fact and disregard the standard applicable to cases under the APA. The traditional summary judgment standard, however, is applicable only to Plaintiffs' two claims under the Due Process Clause.

### A. APA Claims

Defendants argue that USCIS and the BIA did not violate the APA by applying § 204(c) in considering the Instant Petition and by concluding that there was substantial and probative evidence that Pak's first marriage was for the purpose of evading immigration laws. Plaintiffs argue that Defendants violated the APA because they improperly applied § 204(c) in adjudicating the Instant Petition when there was no affirmative finding of fraud in the adjudication of the 2011 Petition. Plaintiffs also assert that by applying § 204(c), Defendants improperly "reopened" the 2011 Petition. Plaintiffs further argue that there is an issue of fact as to whether there is substantial and probative evidence in the record supporting USCIS' and BIA's findings.[3]

---

[3] Plaintiffs also argue that Defendants violated the APA by failing to provide Plaintiffs with the complete administrative record. For the same reasons the Court grants Defendants'

1. **Whether Defendants Can Apply § 204(c) Without an Affirmative Finding of Fraud in the Original Proceeding**

In arguing that the agency can apply § 204(c) in this case, Defendants rely on *Matter of Tawfik*. In that case, the BIA explained:

> Section 204(c) of the Act, 8 U.S.C. § 1154(c), prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. Accordingly, the district director must deny any subsequent visa petition for immigrant classification filed on behalf of such alien, regardless of whether the alien received a benefit through the attempt or conspiracy. As a basis for the denial it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy. However, the evidence of such attempt or conspiracy must be documented in the alien's file and must be substantial and probative.
>
> Neither section 204(c) of the Act nor the regulations specify who may make the Attorney General's decision in such matters and at what point it is to be made. However, we have held that the determination is to be made on behalf of the Attorney General by the district director in the course of his adjudication of the subsequent visa petition.
>
> In making that adjudication, the district director may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage. Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him.

*Matter of Tawfik*, 20 I. & N. Dec. 166, 167-68 (1990) (citations omitted). Defendants argue that here the relevant Field Office Director relied on the appropriate evidence in the record to reach the independent conclusion that Pak's first marriage was fraudulent.

---

motion for summary judgment against Plaintiffs' due process claim based on Defendants' alleged failure to produce the complete administrative record, discussed below, the Court grants summary judgment against Plaintiffs' APA claim on this ground.

PAGE 8 – OPINION AND ORDER

Plaintiffs respond that *Matter of Tawfik* supports their position. Plaintiffs note that in *Matter of Tawfik* in the first proceeding "it was not found that the beneficiary had attempted or conspired to enter into a marriage for the purpose of evading the immigration laws," *id.* at 168, just like in Pak's first proceeding. The BIA in *Matter of Tawfik* held that the conclusion in the first proceeding that "the record contained evidence, which had not been rebutted, 'from which it [could] reasonably be inferred' that the beneficiary entered into a marriage for the primary purpose of obtaining immigration benefits . . . . does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c) of the Act." *Id.* (first alteration in original, second alteration added). Plaintiffs contend that USCIS' ultimate finding in Pak's first proceeding similarly does not rise to the level of substantial and probative evidence.

Plaintiffs' argument quoting *Matter of Tawfik*, however, ignores the next section of that opinion, which begins:

> Since, with respect to the first visa petition submitted on behalf of the respondent, there was no affirmative finding that the marriage was entered into for the purpose of evading the immigration laws, resolution of whether the visa petition revocation can be sustained will depend on a determination of whether there is, *at present*, *sufficient evidence*, inclusive of evidence relied upon in the determination of the first visa petition, to support the contention that the beneficiary's previous marriage to a United States citizen was entered into for purposes of evading the immigration laws.

*Id.* at 168-69 (emphasis added). The BIA then analyzed the record and concluded it was insufficient to apply the fraudulent marriage bar. *Id.* at 169-70. Thus, the fact that the first adjudication did not contain an affirmative finding of fraud did *not* prevent the BIA or USCIS from considering anew, in the second proceeding, whether the first marriage was fraudulent. It is not the ultimate finding in the first proceeding that matters; it is the *evidence* in the record during the second proceeding.

PAGE 9 – OPINION AND ORDER

"The [USCIS] interpretation of the Immigration and Nationality Act 'is entitled to deference and should be accepted unless demonstrably irrational or clearly contrary to the plain meaning of the statute.'" *Occidental Eng'g.*, 753 F.2d at 768 (quoting *Olivares v. INS*, 685 F.2d 1174, 1177 (9th Cir. 1982)). The BIA's decision in *Matter of Tawfik* allows USCIS to apply § 204(c) in an I-130 proceeding considering a petition based on a subsequent marriage when USCIS did not make an affirmative finding that a previous marriage was an attempt or conspiracy to evade the immigration laws. The BIA concluded that so long as there is substantial and probative evidence in the record *at the time of the second proceeding* demonstrating the requisite intent, the agency may apply § 204(c). Nor is such consideration a "reopening" of the first proceeding, as Plaintiffs contend.

This application of the INA is not irrational or clearly contrary to law. The Court rejects Plaintiffs' argument that USCIS and the BIA erred simply by applying § 204(c), or that such application constitutes an improper reopening of Pak's 2011 Petition. The Court next considers whether USCIS' and BIA's conclusion that there was substantial and probative evidence in the record that Pak's first marriage was fraudulent was arbitrary and capricious.

### 2. Whether There was Substantial and Probative Evidence of Marriage Fraud

Plaintiffs contend that there is a genuine dispute of material fact about whether there is substantial and probative evidence in the record supporting the Director's decision. The correct standard in considering cases under the APA, however, is whether the evidence in the record permitted USCIS and the BIA to reach its decision, giving the agency the proper deference on judicial review. The Ninth Circuit in *Occidental Engineering* addressed this argument when a petitioner before the precursor agency to USCIS similarly argued that issues of fact precluded granting the agency's motion for summary judgment.

> Occidental contests the district court's grant of summary judgment on the grounds that there exist disputed issues of material fact. But there are no disputed facts that the district court must resolve. [A district] court is not required to resolve any facts in a review of an administrative proceeding. Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *De novo* factfinding by the district court is allowed only in limited circumstances that have not arisen in the present case. The appellant confuses the use of summary judgment in an original district court proceeding with the use of summary judgment where, as here, the district court is reviewing a decision of an administrative agency which is itself the finder of fact. In the former case, summary judgment is appropriate only when the court finds there are no factual issues requiring resolution by trial. In the latter case, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.

*Occidental Eng'g.*, 753 F.2d at 769-70 (citations omitted).

The Ninth Circuit also has explained that the "substantial and probative" standard of proof that USCIS and BIA must consider is not the same as the "substantial evidence" threshold that a reviewing court considers in evaluating whether an administrative agency has violated the APA. *Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 814-16 (9th Cir. 2020). The "substantial-and-probative-evidence standard" of proof "is at least as high as a preponderance of the evidence." *Id.* at 816. For a reviewing court, however, "[i]n the immigration context, the substantial-evidence standard means that a reviewing court must affirm the BIA's order when there is such relevant evidence as reasonable minds might accept as adequate to support it, *even if it is possible to reach a contrary result on the basis of the evidence.*" *Id.* at 814-15 (emphasis in original) (quotation marks omitted).

Defendants highlight evidence in the record that they argue supports their finding of substantial and probative evidence of marriage fraud, including:

1. During the July 2, 2012, interview with Pak and his first wife, neither could remember where they went on their first date and what movie they saw, and they did not articulate any future plans together;

2. During the July 2, 2012 interview, Pak claimed that he met his first wife at his father's store and Pak immediately asked her out;

3. No one attended Pak's first wedding in Portland except him, his first wife, the pastor, and Pak's father, even though Pak's wife's family lived in Salem;

4. Pak's first wife stated she "just didn't care" about having a small wedding with no one attending;

5. Pak's first wife did not know the name of Pak's mother, even though Pak's first wife claimed she had spoken with Pak's mother via Skype and was waiting for her to be able to attend before holding a "big" wedding ceremony;

6. Pak and his first wife's marriage certificate, 2011 Petition, and other forms and documentary evidence submitted by Pak's first wife listed various different addresses for her, and some included "whited-out" alterations to change her address to reflect that she and Pak lived together;

7. Pak's first wife stated at the July 2012 interview that she did not know where she lived from February 2010 to December 2011, which the interviewer found to be not credible;

8. Pak's first wife originally submitted very few documents to support her application and show that she and Pak had a genuine marriage: a May 2012 phone statement for cell phones owned by Pak's father, a May 2012 letter from an insurance company, and the marriage certificate. Along with being dated shortly before the July 2012 interview, they were found to be suspect because they did not support a bona fide marriage when Pak's first wife admitted that she did not have a license and did not drive and the cell phones were all owned by Pak's father and thus provided no evidence about the two of them;

9. After the interview when USCIS requested additional information, Pak's first wife submitted a copy of an Oregon ID card that was issued in July 2012, Bank of America account statements from May and July 2012, and an unsigned debit card from that account;

10. When USCIS officers conducted a site visit to the purported shared residence of Pak and his first wife, she was not there, and the officers found no women's clothing, toiletries, or other evidence that a woman lived with Pak;

11. During the site visit and in the later follow up with Pak's first wife, the two gave conflicting stories about where the first wife was and why, and where she worked;

12. USCIS sent a Notice of Intent to Deny (NOID) the 2011 Petition, providing Pak's first wife 30 days to respond, and she did not dispute any of the derogatory evidence other than explaining why Pak paid the rent on a Salem apartment for her family, although she claimed not for her because she lived in Portland with Pak;

PAGE 12 – OPINION AND ORDER

13. During his 2017 interview relating to the Instant Petition, Pak could not remember his first wife's middle name, her parents' names, or when he separated or divorced his first wife;

14. During his 2017 interview, Pak changed his story about how and where he met his first wife (introduced by a friend at a Chinese restaurant), and when he asked her out (after meeting her several times to appease his parents), but he still could not recall many details (*e.g.*, the name of the friend or the name of the restaurant);

15. During his 2017 interview, the only thing he could remember about his proposal to his first wife was that he proposed to her while "in his car";

16. USCIS sent Lee a NOID the Instant Petition in 2018, based on marriage fraud ban, and gave Lee 30 days to respond. In response, she provided a personal statement, a letter from the pastor who performed the 2011 ceremony, and a psychological evaluation describing Pak's early childhood traumatic brain injury and its long-lasting effect on his memory;

17. Pak's 2018 post-NOID statement explained that different work schedules led to his first divorce and his description of his first wife's job was different than his description of her job during the 2012 site visit; and

18. USCIS concluded the new evidence did not overcome the finding of the previous marriage fraud.

Plaintiffs argue that this evidence does not meet the "substantial and probative" standard because it contains merely "minor inconsistencies." The Court rejects this argument—the evidence described above does not reflect only minor inconsistencies.

Plaintiffs also argue that this evidence does not meet the applicable standard because the facts in this case do not include certain facts that have been found in other cases in which USCIS has found marriage fraud. These facts include that Pak and his first wife never admitted to fraud, never admitted that his first wife accepted money in exchange for entering into the marriage, and never admitted that they did not live together. Plaintiffs cite cases in which these are facts on which USCIS has found marriage fraud and while such facts may be *sufficient* to sustain USCIS' evidentiary burden, they are not *necessary*.

The Court rejects Plaintiffs' argument because consideration of whether USCIS has met its "substantial and probative" evidence burden is done on a case-by-case basis, and there are

other facts in the record that meet USCIS' evidentiary burden. These include that Pak and his first wife submitted changing and unconvincing information about her residential address and employment, that it was evident they did not live together during the site visit, that it was evident they did not know details about one another and their relationship that persons in a bona fide relationship would know, that their wedding ceremony was suspiciously small and without family attending, and that Pak's first wife did not submit sufficient documentary evidence supporting a bona fide relationship.

Plaintiffs also contend that Pak's traumatic brain injury and ensuing cognitive difficulties, as evidenced by the new psychological report, explain the inconsistencies in the record. The Field Operations Director considered the new psychological report and discounted it as inconsistent with other evidence, such as Pak's grades in Korea, his grades at community college in the United States, and the scope of his memory lapses during the 2011 Petition proceedings. AR 7-8. The BIA also considered the psychologist's report, noting that the Field Operations Director discounted it. *In Matter of Pak*, 28 I. & N. Dec. at 118. The BIA then stated: "However, even crediting this evidence, the Director identified conduct of the couple after the marriage that, unrelated to any memory issues, indicates their subjective state of mind when they married. In particular, he concluded that the Summary of Findings detailing the September 21, 2012, site visit to the claimed marital residence establishes fraud." *Id.*

Plaintiffs disagree with the reasons given by Defendants in discounting the new psychological report. Plaintiffs argue that evidence in the record, including his low middle school grades (almost all Ds and Fs), a psychological report from middle school, and the fact that the only classes he did well in at community college were ones he had taken before in Korea or ones that involved working with his hands, support that he has cognitive difficulties. Although

Plaintiffs frame their argument as creating a genuine dispute of material fact, the Court construes Plaintiffs' argument as that the agency's explanation for discounting the psychological report runs counter to the evidence or is not one on which reasonable minds could accept as supported by the evidence. The Court agrees that the record shows that Pak did poorly in middle school in Korea and that his performance in school in the United States was mixed, which is some evidence contradicting the agency's conclusion.

USCIS, however, also discounted the effects of Pak's purported memory issues because of the scope and volume of the lapses in memory relating to his first marriage. And the BIA affirmed after accepting the psychologist's report as true, finding that there was sufficient other evidence in the record unrelated to memory issues that was substantial and probative that supported a finding of marriage fraud.

The standard for whether an agency's action is arbitrary and capricious is not whether there is some evidence that may conflict with a particular finding. "To survive a challenge, the agency must articulate 'a satisfactory explanation' for its action, 'including a rational connection between the facts found and the choice made.'" *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020) (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019)). There is a rational connection between the facts found and USCIS and BIA discounting the effect of Pak's alleged memory problems. For example, although having some cognitive problems may explain some inconsistencies, not knowing how you met your wife or where your wife works or lives indicates a more serious cognitive difficulty than was asserted. Additionally, issues such as the whited-out addresses and Pak's first wife's changing statements about her residential address, the fact that she did not reside with him during the September 2012 site visit, and her lack of supporting documentation are unrelated to Pak's alleged memory problems. Further, "*even if it is*

*possible to reach a contrary result on the basis of the evidence*" described by Plaintiffs, there is sufficient "relevant evidence as reasonable minds might accept as adequate to support" USCIS' and BIA's conclusions. *See Zerezghi*, 955 F.3d at 814-15 (emphasis in original).

Plaintiffs' final argument under the APA is that this Court should follow the reasoning of U.S. District Judge Clark Waddoups in *Pitman v. United States Citizenship & Immigration Services*, 485 F. Supp. 3d 1349 (D. Utah 2020), *amended on reconsideration in part on other grounds*, 2022 WL 2257178 (D. Utah June 23, 2022), and reverse the conclusions of USCIS and the BIA. The holding in *Pitman*, however, was based on facts that are not present in this case. As Judge Waddoups explained:

> The BIA's Order affirming the USCIS's Director's decision was arbitrary and capricious because it failed to recognize that the Director never "found" substantial and probative evidence of marriage fraud in the Notice of Intent to Deny ("NOID"). Instead, at the time the Director issued the NOID, she was under the mistaken belief that Mr. Pitman bore the burden, under a clear and convincing standard of proof, to "show" that Ms. Damaschin's prior marriage to Mr. Barnes was "entered into in good faith and not for the purpose of evading immigration law." The Director's failure to make findings of substantial and probative evidence of marriage fraud in the NOID meant the burden never shifted to Mr. Pitman. Because a shifting of the burden is a necessary step before USCIS can properly deny a petition under 8 U.S.C. § 1154(c), the BIA's decision affirming the Director's denial was a failure to follow its own regulations and therefore arbitrary and capricious.

*Id.* at 1354-55 (record citations omitted).

Here, USCIS made an express finding in the NOID that there was substantive and probative evidence of marriage fraud in Pak's first marriage. AR 17 ("USCIS finds that there is substantial and probative evidence that the beneficiary entered into a fraudulent marriage with [Pak's first wife] to gain immigration benefits."). Nor did USCIS improperly shift a "clear and convincing" burden of proof onto Plaintiffs. Thus, *Pitman* is inapposite.

PAGE 16 – OPINION AND ORDER

The Court finds that USCIS and BIA did not act in adjudicating Plaintiffs' petition and application in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. There is a rational connection between the many facts found by USCIS and the BIA and their conclusion that there was substantial and probative evidence in the record that Pak's first marriage was fraudulent and entered into for the purpose of evading the immigration laws. The Court therefore grants Defendants' motion on Plaintiffs' APA claims.

## B. Due Process Claims

Plaintiffs argue that Defendants violated Plaintiffs' due process rights under the Fifth Amendment by failing to provide Plaintiffs with the derogatory evidence on which Defendants relied to deny the Instant Petition.[4] Particularly, Defendants failed to provide Plaintiffs with the 2012 "Summary of Findings" from the adjudication of the 2011 Petition, even though the BIA expressly relied on that evidence in affirming USCIS' denial of the Instant Petition. Plaintiffs

---

[4] Plaintiffs also argue that applying § 204(c) when there was no affirmative finding of fraud in the previous adjudication violates their due process rights. Plaintiffs argue that the BIA erred in determining *Matter of Pak* and that it is a precedential opinion with a "novel" construction of the INA that may be used going forward to allow for § 204(c) to be used in a manner that will allow for a "capricious misuse of authority." As discussed above, however, the ability of USCIS to adjudicate the validity of a previous marriage in the proceedings of a subsequent marriage was made clear in *Matter of Tawfik*, more than 30 years ago.

Plaintiffs contend that USCIS will deny petitions for lack of evidence without finding fraud and then later make findings of fraud without providing notice and evidence. The petitioner and beneficiary in subsequent proceedings, however, have a procedural due process right to receive the derogatory evidence used against them and rebut it, and USCIS still must have "substantial and probative" evidence that the beneficiary attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The Court rejects Plaintiffs' argument that there is a genuine dispute of material fact that USCIS' interpretation of the INA violates due process.

PAGE 17 – OPINION AND ORDER

also contend that redacting certain documents in the administrative record violates Plaintiffs' procedural due process rights.[5]

The Ninth Circuit in *Zerezghi* held that it violated the procedural due process rights of a petitioner and spouse beneficiary for USCIS not to disclose information on which it relied to deny a petition. 955 F.3d at 811-12. The agency must provide "specific, rebuttable details about the situation or produce the underlying documents" so that the petitioner can have a "meaningful opportunity to rebut" the information. *Id.* at 812 (quotation marks omitted).

The Court disagrees that the redactions in two documents in the administrative record violates Plaintiffs' procedural due process rights. The Court has reviewed unredacted versions and finds that the redactions are non-substantive and agrees with Defendants' characterization that they were intended to protect law enforcement methods. They do not reflect the basis on which the 2011 Petition or the Instant Petition was denied or provide information for which Plaintiffs need disclosure to rebut.

---

[5] Plaintiffs also argue that one document not included in the administrative record, but referenced in the administrative record, must be included in the administrative record. "The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original).

In response to Plaintiffs' argument, Defendants submit with their reply brief the Declaration of Sean Cimino, the Immigration Services Officer who adjudicated Lee's petition and issued the 2018 NOID and the 2018 final decision letter. ECF 60. Mr. Cimino states that he did not directly or indirectly rely upon or consider the document referenced but not included in the administrative record in making his decision and that is why the document was not included in the certified administrative record. He nonetheless attaches the disputed document to his declaration. No matter if providing the document at this stage of the litigation could cure any violation, the Court accepts Mr. Cimino's statement that the document was not relied on in adjudicating Lee's petition and therefore the failure to include it in the administrative record and disclose it to Plaintiffs did not violate their rights.

The facts of *Zerezghi* that supported the finding of a due process violation are also distinguishable from Plaintiffs' situation. In *Zerezghi*, USCIS did not disclose a rental application or describe it, and simply referenced "records" as showing that the marital couple did not live together. *Id.* at 813. Thus, the couple could not meaningfully rebut the evidence. *Zerezghi* does not hold that a petitioner must be provided with any specific piece of paper, but only that the petitioner must get "specific, rebuttable details" or the "underlying documents"— the point is that the petitioner must have a meaningful opportunity to rebut derogatory evidence. *Id.* at 812.

Here, although the 2012 Summary of Findings was not specifically referenced or disclosed to Plaintiffs until this federal litigation, the contents of the document were detailed in the 2018 NOID and the 2018 final decision letter. Plaintiffs were given specific, rebuttable details about the content of the 2012 Summary of Findings to which they could meaningfully rebut. Thus, USCIS complied with *Zerezghi* and due process requirements.[6]

USCIS acknowledges that the 2012 Summary of Findings contained one piece of information that was not contained in the 2018 NOID. This information relates to Pak and his father and includes that there is a "possibility" that Pak and his father "conspired to obfuscate material facts relating to their respective nonimmigrant histories." AR 445. Plaintiffs, however,

---

[6] *Zerezghi* applied the three factors from *Mathews v. Eldridge*, 424 U.S. 319 (1976), in determining whether failure to disclose specific details or the underlying documents violated due process. The only factor at issue in Defendants' motion is the second factor, the risk of erroneous deprivation of the private interest through the procedures used and the value of more procedures. *See Mathews*, 424 U.S. at 335. Because the specific details of the information in the 2012 Summary of Findings was disclosed in the 2018 NOID and Plaintiffs had the chance to rebut it before USCIS, and it was again disclosed the final letter and Plaintiffs had the chance to rebut it before the BIA, the risk of erroneous deprivation and the value of additional procedures is low. This second *Mathews* factor is built-in to *Zerezghi's* standard that either disclosing underlying documents or their specific, rebuttable details is required.

PAGE 19 – OPINION AND ORDER

do not argue that this single data point was material, was relied on by USCIS in its ultimate determination, or that its disclosure would have provided Plaintiffs with the opportunity to rebut the information relating to Pak and his first wife.

Plaintiffs' final argument on their due process claims is that if the Court declines to find the application of § 204(c) in this context to be a due process violation, then the Court must find 8 C.F.R. § 204.2(a)(1)(ii) is not in accordance with its governing statute and void as *ultra vires*. This argument relies on Plaintiffs' contention that USCIS' application of § 204(c) in a subsequent proceeding when there has been no affirmative finding of fraud in the adjudication of the previous marriage's I-130 petition is a *sua sponte* reopening of that previous petition. The Court has already rejected this argument.

## CONCLUSION

The Court GRANTS Defendants' motion for summary judgment, ECF 53.

**IT IS SO ORDERED**.

DATED this 21st day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge